U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

NOV 2 1 2005

ROBERT H. SHEMWELL, CLERK
BY_____
           DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| TRAVIS D. IVORY, ET AL | CIVIL ACTION NO. 03-2102 |
| VERSUS | JUDGE HICKS |
| SOPHIA BURNS, ET AL | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is defendants' "Motion to Dismiss and for Summary Judgment." [Doc. No. 19]. Defendants, Claiborne Parish Sheriff Kenneth Volentine ("Sheriff Volentine"), Warden/Chief Jailer of the Claiborne Parish Jail Sophia Burns ("Warden Burns"), Deputy Magalene George ("George"), Rhonda Thurmon ("Thurmon") and LaSalle Management Company, LLC ("LaSalle") (collectively sometimes referred to as "Defendants"), move the Court to grant them qualified immunity for their actions with regard to Cheryl Ivory ("Ivory") during the day preceding Ivory's death. Defendants move that Thurmon be dismissed as she was not the attending nurse. Plaintiffs, Ivory's successors, oppose this motion, contending that qualified immunity should not be granted because the defendants violated clearly established law and acted objectively unreasonable in light of Ivory's medical condition. [Doc. No. 28]. For the following reasons, the Court grants the motion for qualified immunity.

## FACTUAL BACKGROUND

On November 13, 2002, Cheryl Lynne Ivory ("Ivory") was arrested and brought to the Claiborne Parish Women's Jail as an inmate. On November 16, 2002 around 5:30 p.m., Ivory began complaining of stomach pains to her roommate, Lisa Scott. [Scott Affidavit, Plaintiffs' Exhibit 1]. According to Scott, Deputy Smith gave Ivory "Tylenol" around 9:30 p.m. [Scott Deposition, Plaintiffs' Exhibit 9].

Inmate Betty Jones was awakened by Ivory around 2:00 a.m. Jones heard Ivory ask Deputy Smith to call the hospital. [Jones Affidavit, Plaintiffs' Exhibit 3]. Jones saw Smith give Ivory some medication. Jones also claims she heard Smith tell Ivory, "shut your mother fucking mouth - - you are just coming down off that shit." Id.

According to Scott, Ivory was still complaining at 4:00 a.m. when she came by the dorm while on laundry duty. [Scott Affidavit, Plaintiffs' Exhibit 1]. Upon return to the dorm, Scott found Ivory still complaining of stomach pain. Scott called to the guard and Deputy Smith came to their cell. According to Scott, Smith informed them that she could not give Ivory more Tylenol and left. [Scott Affidavit, Plaintiffs' Exhibit 1]. However, the Jailer's Log notes that Smith gave Ivory ibuprofen and liquid antacid at 5:30 a.m. [Plaintiffs' Exhibit 6].

After repeated calls to the guards to come back and check on Ivory, finally, at 8:30 a.m. Deputy George came to their cell. Ivory told George that she had the same problem before and to call Homer Memorial Hospital. George said, "I already know what your problem is, coming down off a high." George left without seeking any further treatment. The inmates continued to "holler for help" with no response. [Scott Affidavit, Plaintiffs' Exhibit 1].

On routine medicine rounds at 11:00 a.m., George came back to the cell. When asked if she called the hospital, George said that the "line was busy" and that she would call the nurse "around 12:00 or 12:30." After more verbal calls to check on her by Scott and other inmates, George returned around 1:30 p.m. [Scott Affidavit, Plaintiffs' Exhibit 1]. George called Nurse Quarles, had trouble reaching her and decided to call Nurse Thurmon. George told Thurmon that she may be a drug addict and going through withdrawals, although George admits this was based on rumors from the inmates. [George Deposition, Plaintiffs' Exhibit 4, p. 42; see also, Jailer's Log, Plaintiffs' Exhibit 6.] Thurmon advised Benadryl until Quarles arrived. George could not find any Benadryl, but Quarles arrived shortly thereafter. [Jailer's Log, Plaintiffs' Exhibit 6.] George informed Quarles of the situation and Thurmon's recommendation. Quarles went to the men's facility to get Benadryl. [Quarles Deposition, Plaintiffs' Exhibit 7].

Nurse Quarles went to check on Ivory and give her Benadryl around 2:45 p.m. By this time, Ivory was dry-heaving and balled into a fetal position. Quarles gave Ivory Benadryl and told her to rest. Ivory asked her to call Homer Memorial Hospital. Scott told Quarles she thought Ivory should go to the hospital; Quarles responded "you are not a nurse." [Scott Affidavit, Plaintiffs' Exhibit 1].

Ivory threw up the medicine Quarles gave her a few minutes after she left. Scott again called for help. George came to the door. George told Ivory to get back into bed, as she had fallen onto the floor. Ivory did not get up, so Scott and another inmate, Betty Jones, picked Ivory up and put her on a trunk. At George's instruction, Scott went to get clean sheets and a fresh mattress for Ivory. [Scott Affidavit, Plaintiffs' Exhibit 1].

When Scott came back with the fresh sheets, Ivory had urinated on herself. George was present. George instructed them to put Ivory on the bed and left. Scott became scared when another inmate said she thought Ivory was dying. Scott again called for help. George returned around 4:45 p.m. and said she would call the nurse again. [Scott Affidavit, Plaintiffs' Exhibit 1].

George called Quarles again and told her that Ivory was still vomiting. Quarles stated she would come back to see Ivory and that she may need to go to the hospital. [Jailer's Log, Plaintiffs' Exhibit 6]. George called Warden Burns at 5:58 p.m. to advise of the situation. Warden Burns called Sheriff Volentine and then called George back at 6:00 p.m. Warden Burns told George to release Ivory on her own recognizance. Deputy Smith came on duty and George explained the situation to her. At 6:13, Smith called Ivory's mother, Ethel Wilson to come pick up her daughter. [Jailer's Log, Plaintiffs' Exhibit 6].

In the meantime, Ivory's condition worsened. Ivory asked Scott for water around 5:00 p.m. She began vomiting blood about the same time. Scott again called for help. George came to the door, instructed Scott to stay with her and left. By 5:45 p.m., Ivory was not responsive. Her eyes rolled back in her head. Inmate Diane Howard yelled for help.

When George and Smith returned to the dorm to prepare Ivory for release, Ivory was unresponsive. George called Warden Burns back and Burns instructed her to call an ambulance. [George Deposition, Plaintiffs' Exhibit 4; George's Special Occurrence Report, Plaintiffs' Exhibit 5]. Claiborne Ambulance arrived at 7:25 p.m. [Jailer's Log, Plaintiffs' Exhibit 6]. The EMTs advised that Ivory was dead. Id.

LaSalle Management Company and the Claiborne Parish Law Enforcement District have a "Services Agreement" regarding the operation of the Claiborne Parish Detention Center. [Plaintiffs' Exhibit 11].

LAW AND ANALYSIS

I.   Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). See also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.

Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075). See also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id., 477 U.S. at 248, 106 S. Ct. at 2510.

II.     Qualified Immunity Standard

Qualified immunity is a threshold question because it protects government officials from civil liability, even from having to defend against a suit. Thompson v. Upshur County, 245 F.3d 447 (5th Cir. 2001) (citing Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). The qualified immunity shield is broad and protects actions, even mistakes, that are reasonable under the existing law. Fraire v. City of Arlington, 957 F.2d 1268 (5th Cir. 1992). Once a Section 1983 defendant asserts qualified immunity and

shows that he is a governmental official acting within his discretion, the burden shifts to the plaintiff to establish that the conduct violated clearly established law. Thompson, 245 at 456 (quoting Pierce v. Smith, 117 F.3d 866, 871-72 (5th Cir. 1997). The qualified immunity analysis is actually a two step inquiry: (1) whether there is an allegation of a violation of a clearly established federal right; and (2) whether the conduct was objectively unreasonable in light of the clearly established law at the time of the violation. Id. (citing Hare v. City of Corinth, 135 F.3d 320 (5th Cir. 1998)). "Clearly established" is defined such that it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987). The acts are evaluated objectively at the qualified immunity stage; the defendants' subjective state of mind is considered only for Section 1983 liability. Thompson, 245 F.3d at 459.

III. Constitutional Right to Reasonable Medical Care

The Fourteenth Amendment provides pretrial detainees the right to not have their serious medical needs met with deliberate indifference. Thompson, 245 F.3d at 457 (citing Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). Delirium tremens ("DTs") has been established as a serious medical need. Id.; see also, Colle v. Brazos County, Texas, 981 F.2d 237 (5th Cir. 1993). Furthermore, significantly exacerbating delay in providing life saving medical treatment to a detainee with DTs has also been established as a violation of constitutional rights. Id.; see also, Lancaster v. Monroe County, 116 F.3d 1419 (11th Cir. 1997).

In this case, defendants admit that they misdiagnosed Ivory's condition, but contend that the care she received was objectively reasonable. Plaintiffs contend that the misdiagnosis was unreasonable because Ivory told two deputies to call Homer Memorial Hospital to check her records. Plaintiffs argue that the failure to take a simple step and call the hospital amounts to deliberate indifference. Plaintiffs contend that even if defendants thought Ivory had DTs, they still did not provide her reasonable medical care in treating DTs.

IV. Standards for Section 1983 Liability

A. Individual

"Deliberate indifference in the context of an episodic failure to provide reasonable medical care to a pretrial detainee means that: 1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm occur." Thompson v. Upshur County, 245 F.3d 447, 458-459 (5th Cir. 2001) (citing Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996)(en banc). "However, deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Id.

B. Supervisory

Supervisory officials are not vicariously liable for the actions of subordinates for claims pursuant to 42 U.S.C. § 1983. Thompson, 245 F.3d at 459. Supervisors are liable for actions of subordinates pursuant to Section 1983 if: 1) they failed to train or supervise

those involved; 2) there is a causal connection between failure to supervise or train and violation of rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. Id.

"Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." Id. "The plaintiff must generally demonstrate at least a pattern of similar violations." Id. "Furthermore, the inadequacy of training must be obvious and obviously likely to result in a constitutional violation." Id. (citing City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).

V. Qualified Immunity Standard Applied

    A. Allegation of Constitutional Violation

Plaintiffs allege that the deputies, Smith and George, the LPN Quarles, Warden/Chief Jailer Burns, and Sheriff Volentine were all personally aware of the risk to Cheryl Ivory and acted with deliberate indifference to her serious medical needs. Plaintiffs also allege that Sheriff Volentine established liability for the Parish and LaSalle Management by his personal actions as well as failing to train and providing policies which manifested deliberate indifference to the serious medical needs of the detainees. The Court finds that plaintiffs have met the general burden of alleging a constitutional violation.

    B. Objective Reasonableness of Defendants' Acts

Having found allegations of constitutional violations, the Court must now determine the objective reasonableness of the defendants' actions. It is the plaintiffs' burden to show

that "all reasonable officials similarly situated would have then known that the alleged acts of the defendants violated the United States Constitution." Thompson, 245 F.3d at 460. Plaintiffs have narrowed the questions to two: (1) whether all reasonable officials similarly situated would have then known that administering Tylenol, antacid, and Benadryl and nothing more over a span of twenty-five hours, during which the detainee was vomiting blood and suffering from enuresis, would constitute a significantly exacerbating delay of medical care; and (2) whether all reasonable officials similarly situated would have then known that releasing Ivory on her own recognizance after twenty-five hours of suffering, during which she was vomiting blood and suffering from enuresis, would constitute a denial of medical care. The Court will consider the defendants' objective reasonableness per these questions with some clarification. The evidence shows that Ivory did not vomit until sometime between 1:30 and 2:45 p.m. on Sunday. The questions, as phrased by the plaintiffs, insinuate that Ivory was vomiting over a period of 25 hours. In the light most favorable to the plaintiffs, Ivory first vomited about 4 hours and 30 minutes before she died. With this clarification in mind, the Court will now consider these questions separately as to each defendant.

1. Sheriff Volentine

Plaintiffs allege that Sheriff Volentine is liable both personally for his order to release Ivory and in his capacity as Sheriff for failure to train and provide proper policies. In order to meet their burden against Sheriff Volentine's claim of qualified immunity plaintiffs must show that all reasonable sheriffs would recognize the unconstitutionality of: (1) failing to train their staff on the proper treatment for DTs, chain of command or jail protocol and/or

(2) provided policies that impeded Ivory's treatment of her serious medical need. At the time of Ivory's detention and death, it was clearly established that DTs constituted a serious medical need. Plaintiffs have also shown that the LPN on duty violated clearly established state law while employed by the Sheriff. Plaintiffs must also show that Sheriff Volentine is not entitled to qualified immunity in his personal capacity by showing that all sheriffs would have known that his personal actions would significantly exacerbated delay or denial of Ivory's serious medical need.

The Court finds that the Sheriff's actions were objectively reasonable. The Court finds that all sheriffs would not have known to specifically train staff on how to deal with a serious medical need of detainees, including proper jail protocol and specifically how to deal with DTs. All sheriffs should know not to have any policies in place that would preclude serious medical needs from being met. However, plaintiffs have not shown that Sheriff Volentine had any policies in place that impeded care.

Plaintiffs allege that the LPN on duty did not report to a physician or consult with a registered nurse as her LPN status requires pursuant to La. R.S. 37:961, et seq. However, plaintiffs do not allege that Quarles violated Louisiana law at the direction of the Sheriff or pursuant to policies of the Sheriff. There is no vicarious liability under Section 1983. Therefore, Plaintiffs have not identified a specific policy or law that impeded Ivory's medical needs from being met.

Plaintiffs allege that the Sheriff, in his personal capacity, acted with deliberate indifference when he ordered Ivory released from the jail on her own recognizance. Plaintiffs allege that his order to release her prevented her from receiving the medical treatment she needed. The Sheriff was informed of Ivory's condition about 6:00 p.m. by

Warden Burns. At that time she had been sick for less than 24 hours and had been vomiting over a period of several hours. Sheriff Volentine did not have the opportunity to personally observe Ivory's condition.

The Court finds that all reasonable sheriffs similarly situated to Sheriff Volentine would not have known that releasing Ivory would significantly exacerbate delay of her treatment and that it would be a constitutional violation. Ivory's condition deteriorated rapidly. Sheriff Volentine had no reason to believe that Ivory would die before she received additional medical treatment, much less before she was released. Therefore, qualified immunity will be granted to Sheriff Volentine in both his personal capacity as well as his official capacity as sheriff.

2. Warden Burns

Plaintiffs also allege that Warden Sylvia Burns acted unreasonably in both her individual and supervisory capacities. For Burns' actions to be objectively reasonable, her actions must not have led to a significantly exacerbating delay or a denial of medical care for a patient suffering from DTs. Furthermore, as Warden, Burns must have no policies or customs in place that would have led to either. Warden Burns was called by Deputy George twice for advice on how to proceed with Ivory. Burns consulted with the Sheriff and made the recommendation to release Ivory. George called Warden Burns the second time to inform her that they believed Ivory had died. Burns instructed George to call an ambulance and she arrived at the facility shortly thereafter.

The Court finds that all reasonable wardens similarly situated would not have known that releasing Ivory would significantly exacerbate delay in obtaining medical care and/or constitute a deprivation of Ivory's constitutional rights. Plaintiffs have shown no policies

or customs that impeded Ivory's medical treatment. Therefore, qualified immunity will be granted to Warden Burns in both her personal capacity as well as her official capacity as warden.

### 3. Deputy George

Plaintiffs also allege that Deputy Magalene George acted within her individual and official supervisory capacity as Shift Commander. For George's actions to be objectively reasonable, her actions must not have led to a significantly exacerbating delay or a denial of medical care for a patient suffering from DTs. George gave Ivory Tylenol, routinely checked on her and eventually called two nurses, Quarles, on-duty, and Thurmon, off-duty. When Ivory's condition worsened, George called Quarles again and called Warden Burns for advice. At the warden's instruction, George prepared to release Ivory. When Deputy Smith arrived to relieve George, which coincidentally occurred about the same time Warden Burns instructed the release, George informed Smith of Ivory's condition. George remained at the facility although her shift had ended. At no point did George instruct anyone not to provide treatment to Ivory.

Plaintiffs argue that George's failure to call Homer Memorial Hospital as requested by Ivory constitutes deliberate indifference. The Court finds that George had no legal duty to call the hospital. The Court finds that George's failure to call was not objectively unreasonable at that time.

The Court also finds that no reasonable deputy would have thought that her actions significantly exacerbated delay or denial of Ivory's medical treatment. Therefore, the Court finds that George's actions were objectively reasonable and she is entitled to qualified immunity in both her individual and supervisory capacity.

4. LaSalle Management Company

LaSalle Management Company ("LaSalle") is a private prison-management company with a contract with Claiborne Parish Law Enforcement District to perform functions traditionally reserved to the state. Such management companies are subject to Section 1983 liability. Rosborough v. Management & Training Corporation, 350 F.3d 459 (5th Cir. 2003). In order to establish a Section 1983 action against LaSalle, the Plaintiffs must show: (1) the policies, procedures or customs of LaSalle were inadequate; (2) LaSalle was deliberately indifferent to the constitutional rights of Ivory; and (3) there is a causal connection between the inadequate policies and the violation of constitutional rights. City of Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L. Ed. 2d 412 (1989). The lack of policies must be the moving force behind the violation. Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). And as stated earlier, there is no vicarious liability pursuant to 42 U.S.C. § 1983.

Plaintiffs allege that LaSalle's lack of specific policies regarding medical treatment of inmates led to a constitutional violation depriving and/or significantly exacerbating delay in obtaining medical treatment for her serious medical need which eventually led to her death. As discussed above, the clearly established constitutional right is _not_ to have policies facilitating treatment, but to not have policies that _impede_ treatment. Ivory was seen by the on-duty guard multiple times. The guard called for the on-duty nurse, even called the off-duty nurse when she could not get in touch with the on-duty nurse. When Ivory's condition appeared to worsen, the guard again called the nurse and the warden, her supervisor. Ivory was sick for 25 hours. There is no evidence that Ivory was treated with deliberate indifference. There is no indication that the lack of specific policies led to a constitutional violation. Ivory received medication and attention by a nurse. The guards

may not have consulted written policies but they knew by custom and normal procedures to call the nurse and their supervisors. There is no evidence that the lack of policies significantly exacerbated delay of Ivory's treatment. Therefore, the Court finds that Plaintiffs have not shown that LaSalle's lack of policies led to a constitutional violation of Ivory's rights. LaSalle is not liable pursuant to 42 U.S.C. § 1983. The Section 1983 claim against LaSalle will be dismissed.

VI.  Nurse Thurmon

Defendants move to dismiss LPN Thurmon because during the course of discovery it was found that she was not the nurse that treated Ivory. Plaintiffs do not address the dismissal of Nurse Thurmon in their opposition. The evidence shows that while Thurmon was off-duty she instructed Deputy George, by telephone, to give Ivory Benadryl, until Nurse Quarles could be reached. There is no evidence that Thurmon acted with deliberate indifference to Ivory's constitutional rights. Therefore, summary judgment in favor of Thurmon is proper and Plaintiffs claims against Thurmon will be dismissed.

VII.  State Law Claims

The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any remaining state law claims.

## CONCLUSION

The Court finds that qualified immunity shall be granted to Sheriff Volentine, Warden Burns and Deputy George. Nurse Thurmon will be dismissed without opposition. LaSalle Management is not liable because Plaintiffs have not shown that the lack of specific policies led to a constitutional deprivation. It is unfortunate that Ivory died, but the Court cannot conclude that the actions of the prison employees were objectively unreasonable in light of the circumstances.

Therefore:

**IT IS ORDERED** that defendants' "Motion to Dismiss and for Summary Judgment." [Doc. No. 19] shall be **GRANTED**.

Shreveport, Louisiana this 18th day of November, 2005.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE