UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

TRAVIS D. IVORY, ET AL.	CIVIL ACTION NO. 03-2102

versus	JUDGE HICKS

SOPHIA BURNS, ET AL.	MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Cheryl Ivory was in custody as a pretrial detainee at the Claiborne Parish Women's Jail when she began complaining of stomach pains one evening. After about 25 hours of repeated requests for medical help and receipt of limited treatment, during which time Ivory vomited and experienced incontinence, Ivory died due to an obstructed bowel. Four of Ivory's children, two adults and two minors, filed this action pursuant to 42 U.S.C. § 1983 and Louisiana law against Sheriff Kenneth Volentine, the warden, a shift commander who oversaw the cellblock, L.P.N. Rhonda Thurman and LaSalle Management Company, L.L.C.

LaSalle had a contract, at the relevant time, to provide nurse and doctor services for inmates in the jail. Plaintiffs originally alleged that L.P.N. Rhonda Thurman was the LaSalle employee who was at the jail during the relevant time, but discovery indicated that it was actually L.P.N. Quarles who was at the jail that day. The complaint alleged that LaSalle was deliberately indifferent to Ms. Ivory's serious medical condition because it had failed to properly train its employees to respond to medical events such as that suffered by Ms. Ivory.

After discovery was conducted, all defendants joined in a motion for summary judgment, which Judge Hicks granted. LaSalle then filed a Motion for Attorneys' Fees and Costs (Doc. 48), which Judge Hicks referred to the undersigned for report and recommendation. No other defendant has filed a fee motion. For the reasons that follow, it is recommended that LaSalle's motion be denied.

**Prevailing Defendants and Fees**

Title 42 U.S.C. § 1988 provides that in certain federal civil rights actions, including Section 1983 claims, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." A *plaintiff* may be considered a prevailing party for attorney's fees purposes if he succeeds on any significant issue in the litigation that achieves some of the benefit sought in bringing suit. Hensley v. Eckerhart, 103 S.Ct. 1933, 1939 (1983). A prevailing *defendant*, on the other hand, may recover an attorney's fee *only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant.* Hensley, 103 S.Ct. at 1937 n. 2.

In Christiansburg Garment Co. v. EEOC, 98 S.Ct. 694 (1978), incorporated into Section 1988 jurisprudence through footnote 2 of Hensley, the Supreme Court cautioned that assessing fees against plaintiffs simply because they do not ultimately prevail would undermine vigorous enforcement of federal law. "Hence, a plaintiff should not be assessed his opponent's attorney's fees unless the court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became

so." Christiansburg, 98 S.Ct. at 701. "Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation' as required by Christiansburg." Hughes v. Rowe, 101 S.Ct. 173, 179 (1980).

**Analysis**

    **A. The Complaint**

Plaintiffs' complaint outlined their allegations, discussed in more detail below, but with the incorrect assumption that L.P.N. Thurman rather than L.P.N. Quarles had been at the jail that day. Plaintiffs alleged that Thurman was "not trained or licensed to diagnose or even assess such medical condition as Ms. Ivory presented, and is limited by law as to her ability to dispense certain medications." Complaint, ¶ 19. Plaintiffs further alleged that LaSalle and Sheriff Volentine were deliberately indifferent to Ms. Ivory's serious medical condition by knowingly placing an L.P.N. as the only medical attendant at the jail when they knew or should have known that she was not able to assess, diagnose, or treat a prisoner with a serious, life-threatening condition. ¶ 20. LaSalle was said to have been "made aware of this dangerous situation by previous nurses" but had "chosen to ignore the problem," which constituted deliberate indifference to serious medical needs. ¶ 21. Plaintiffs also alleged that LaSalle was responsible, under state law, for the acts and omissions of its employees. ¶ 29.

    **B. The Summary Judgment Record**

The summary judgment record, as set forth in Judge Hicks' Memorandum Ruling (Doc. 46), shows that Ms. Ivory began complaining of stomach pains around 5:30 p.m. one

evening. Deputy Smith gave Ivory Tylenol about 4 hours later. An inmate heard Ivory ask Smith, around 2:00 a.m. the next morning, to call the hospital. The inmate then saw Smith give Ivory some medication and heard Smith tell Ivory to shut her mouth because she was coming down off drugs. An inmate testified that Deputy Smith refused to give medication when Ivory was still complaining at 4:00 a.m., but jail records showed that the deputy gave Ivory ibuprofen and antacid at 5:30 a.m.

    At 8:30 a.m., the morning after Ivory began complaining of pain, Ivory told Deputy George that she had experienced the same medical problem before, and she asked that George call Homer Memorial Hospital. George said she knew what her problem was, it was that Ivory was coming down off a high, and George left without providing or seeking any further treatment. George returned to the cell at 11:00 a.m. on routine rounds. When asked if she had called the hospital, George said that the line was busy and that she would call around noon. George returned around 1:30 p.m. and then called L.P.N. Quarles, but she had trouble reaching Quarles and decided to call L.P.N. Thurman. George, based on rumors from inmates, told the nurse that Ivory may be a drug addict and going through withdrawals. Thurman advised that Ivory be given Benadryl until Quarles arrived. George could not find any Benadryl, but Quarles arrived soon after, went to the male jail facility, returned and gave Ivory Benadryl around 2:45 p.m. Ivory was dry heaving and balled into a fetal position. She asked Quarles to call the hospital. Ivory threw up the medicine a few minutes later, and a cellmate called for help. Ivory had fallen on the floor and had to be picked up by two inmates

and put on a trunk while clean sheets and a fresh mattress were being brought. By the time those items arrived, Ivory had urinated on herself. George told the inmates to put Ivory on the bed, and she left.

George did call L.P.N. Quarles around 5:00 p.m. and told her that Ivory was still vomiting. George also advised the warden of the situation, and the warden called Sheriff Volentine. George was ordered to release Ivory on her own recognizance, and at 6:13 p.m. a deputy called Ivory's mother to come pick her up. In the meantime, Ivory had begun vomiting blood around 5:00 p.m. and, before 6:00 p.m., became unresponsive with her eyes rolled back in her head. When deputies came to the cell to prepare Ivory for release, they found her unresponsive and called the warden, who instructed that an ambulance be called. The EMTs who arrived advised that Ivory was dead.

**C. The Motion for Summary Judgment**

The motion for summary judgment filed by all defendants included only a brief discussion of the claims against LaSalle. Both Sheriff Volentine and LaSalle argued that Plaintiffs could not present facts to show that they were damaged by any policy or custom of the Sheriff or LaSalle. Doc. 19, pp. 4-5.

Plaintiffs' opposition (Doc. 28) complained that L.P.N. Quarles had no training at the facility, no training in the chain of command, and no training as to jail protocol. They added that Quarles had no access to inmate records or intake forms, so she relied on guards (who had no medical training) to assess an inmate's medical background and, contrary to state law,

she did not report to a physician or consult with a registered nurse. Doc. 28, p. 2. The memorandum went on to address various issues, including the claims against the individual defendants. (Plaintiffs appear to have assumed that Quarles was a named defendant; she was not). Another section of the opposition addressed the failure-to-train claim against Sheriff Volentine, which noted that Deputy George and L.P.N. Quarles admitted that they were not trained in how to deal with the situation. pp. 12-13. No portion of the opposition, however, specifically laid out a case for failure-to-train or another brand of deliberate indifference by LaSalle.

LaSalle filed a reply memorandum (Doc. 38) and argued that the evidence submitted by Plaintiffs disclosed no proof of LaSalle's policies, procedures or customs, which LaSalle contended required summary judgment in its favor. Plaintiffs filed a response (Doc. 45) that addressed several factual arguments and urged that the total disregard for Ivory's well-being supported their failure-to-train claim. Plaintiffs emphasized Quarles' admission that she had no training with regard to such matters. Doc. 45, p. 5. Plaintiffs also made a specific argument that LaSalle was liable under Section 1983 because of the absence of any policy or procedure for its medical personnel with regard to the medical issues that were presented. pp. 7-8.

**D. Legal Elements of the Claim**

A private entity such as LaSalle may be deemed a state actor for Section 1983 purposes if its performs a function that is traditionally the exclusive province of the State.

Rosborough v. Management & Training Corp., 350 F.3d 459 (5th Cir. 2003). When assessing the potential Section 1983 liability of a private prison-services entity, most courts have treated them like a municipality or other political subdivision that may not be held liable based on respondeat superior, but only under the limited framework of Monell and similar authority. See Jackson v. Illinois Medi-Car, Inc., 300 F.3d 760, 766 (7th Cir. 2002); Gabriel v. Corrections Corp. of America, 211 F.Supp. 2d 132, 138-39 (D. D. C. 2002); Taylor v. Plousis, 101 F.Supp.2d 255 n. 4 (D. N. J. 2000) ("almost every court to have considered the issue has held that a private corporation, like a municipality, may not be held vicariously liable under § 1983."). The Supreme Court has not yet addressed the issue. See Kritchevsky, Private Parties as Defendants in Civil Rights Litigation, 26 Cardozo L. Rev. 35 (2004).

A municipality (or private prison entity) can be liable under Section 1983 only where a custom or policy of the entity is the moving force behind a constitutional violation. Monell v. New York City Dept. of Social Services, 98 S.Ct. 2018 (1978). In addition to basing liability on a traditional custom or policy, a municipality may be held liable if its failure to train its employees in a relevant respect evidences a deliberate indifference to the rights of a person, and the shortcoming can be properly thought of as a policy or custom that is actionable under Section 1983. City of Canton v. Harris, 109 S.Ct. 1197, 1205 (1989); Roberts v. City of Shreveport, 397 F.3d 287 (5th Cir. 2005).

**E. The Ruling**

Judge Hicks' ruling determined that Plaintiffs had adequately alleged a constitutional violation arising from Sheriff Volentine's failure to train and provide policies. Doc. 46, p.

9. The ruling also determined that L.P.N. Quarles violated clearly established state law by not reporting to a physician or consulting a registered nurse, and that it was clearly established federal law that the (improperly diagnosed) delirium tremens constituted a serious medical need. Id. at 11. However, based on the level of attention from the deputies and the nurse, Judge Hicks also found "no evidence that Ivory was treated with deliberate indifference" and "no indication that the lack of specific policies led to a constitutional violation." Id. at 14-15.

**F. Conclusion**

Plaintiffs' complaint alleged sufficient facts to plead a claim against LaSalle under a City of Canton failure-to-train theory. In the end, however, the court found that none of the actions of the individual defendants amounted to deliberate indifference. The failure to establish that an individual defendant committed a constitutional violation meant that the related claims against LaSalle necessarily failed. See Flores v. County of Hardeman, 124 F.3d 736, 739 (5th Cir. 1997); Olabisiomotosho v. City of Houston, 185 F.3d 521, 529 (5th Cir. 1999).

Plaintiffs ultimately lost, but reasonable minds cannot fault Plaintiffs for hiring counsel to file suit against jail officials and the jail's medical provider based on the events that occurred. The attorneys, rather than clients, ordinarily decide on the appropriate defendants and the causes of action that will be pleaded, and how much effort will be put into pursuing various claims. Yet, it is the individual plaintiffs (two of whom are minors), not their attorneys, who are liable for any fee award to LaSalle under Section 1988.

Courts have made a variety of statements with regard to the effect or weight that counsel's advice should have. See, e.g., Tang v. State of Rhode Island, 163 F.3d 7, 14 (1st Cir. 1998). Most agree that a plaintiff (or defendant) should not be able to point to her attorney's advice as a complete defense to a statutory fee claim, but the attorney's advice or strategy decisions may be considered relevant when deciding whether to order the party to pay her opponents' fees associated with the litigation. The wide discretion afforded district courts in assessing fees against a plaintiff permits consideration of that and any other factors that are relevant in a given case. Plaintiffs' attorneys did not act unreasonably in filing suit against LaSalle based on the facts presented, and a person would certainly not be acting frivolously or maliciously for pursuing the claim against LaSalle, especially if her attorneys, experienced in civil rights litigation, suggested she do so.

The undersigned's review of the record does not indicate that Plaintiffs' claims against LaSalle were merely vexatious, frivolous or brought to harass or embarrass LaSalle. An award of fees to LaSalle in this case would discourage plaintiffs with potentially meritorious claims from pursuing them and perhaps vindicating important public policy interests that favor enforcement of civil rights laws. The best exercise of this court's discretion is to deny LaSalle's motion.

Accordingly,

**IT IS RECOMMENDED** that the **Motion for Attorneys' Fees and Costs (Doc. 48)** be **DENIED.**

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 8th day of February, 2006.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE